# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1042

STATE OF LOUISIANA

VERSUS

JOSE ISREAL AYALA, III

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 87,354
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and Van H. Kyzar, Judges.

**AMENDED AND AFFIRMED.**

Peggy J. Sullivan
Louisiana Appellate Project
P. O. Box 2806
Monroe, LA 71207-2806
(318) 855-6038
COUNSEL FOR DEFENDANT/APPELLANT:
    Jose Isreal Ayala, III

Asa Allen Skinner
District Attorney
Terry Wayne Lambright
First Assistant District Attorney
30th Judicial District
P. O. Box 1188
Leesville, LA 71446-1188
(337) 239-2008
COUNSEL FOR APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

The Defendant, Jose Isreal Ayala, III, appeals his sentence imposed following a guilty plea to the offense of aggravated escape, entered pursuant to a plea agreement with the State of Louisiana. For the reasons assigned, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 3, 2015, the State filed a bill of information charging Defendant with attempted aggravated escape, a violation of La.R.S. 14:110(C) and La.R.S. 14:27,[1] and three companion charges. The charges proceeded under trial court docket number 87,354. Defendant was also charged under a separate docket number with second degree murder and obstruction of justice, though the matters were not consolidated with the instant case. On April 27, 2017, Defendant entered a plea of guilty pursuant to a plea agreement with the State to aggravated escape in addition to a charge of manslaughter, reduced from an original indictment for second degree murder, and obstruction of justice, in cases proceeding under the other docket number, 86,777. The three companion charges from the bill of information in docket number 87,354 that included the aggravated escape charge were dismissed as part of the plea agreement.

The following factual recitation by the prosecutor appears in the record:

BY MR. MASON:

Yes, Your Honor, may it please the court, the State contends that, on or about September 2nd of 2014, Deputy Dalme of the Vernon Parish Sheriff's Office was returning an inmate to S-Cell 1, located at the Vernon Parish Jail at 203 South 3rd Street, Leesville, Vernon Parish, Louisiana. After returning the inmate to his cell, Deputy Dalme proceeded to S-Cell 2 to escort an inmate by the name of "Griffin" to the front office for his nightly glucose check. Upon opening S-Cell 2, defendant, Jose Ayala, struck Deputy Dalme multiple times in the face and intentionally departed from S-Cell 2 and from the custody of Deputy Dalme and ran toward the front of the jail. The defendant, thereafter, entered the main office of the jail and rushed Deputy Tom

---

[1] The bill of information referenced the underlying crime statute but did not reference the attempt statute, La.R.S. 14:27.

Scott, who was seated in the office. The defendant then proceeded to yell profanities at Deputy Scott and started striking the deputy on the side of his face and the back of his head using a closed fist. As a result of the attack, Deputy Scott fell from his chair onto the floor, at which time the defendant continued to strike Deputy Scott in the face until Deputy Dalme was able to return to the main office and assist Deputy Scott in pushing the defendant and inmate Griffin out of the office and into the hallway. Once Deputy Dalme returned and was in the office with Deputy Scott, Deputy Dalme observed Jose Ayala with a set of jail keys attempting to open the gate between Bullpen 2 and Bullpen 4. Deputy Dalme yelled commands to the defendant and at Griffin to return to their cells, at which time they retreated slowly. Thereafter, other agents, law enforcement arrived and secured the defendant and the inmate, Griffin, in their cells. As a result of this incident, Deputy Dalme suffered injury and Deputy Scott suffered severe injuries to his face and to his head that resulted in treatment by the hospital and physicians located there. And, Your Honor, also, with regards to this, the State's recitation of facts, the State would also move to incorporate all discovery responses filed by the State and the suit record in its entirety.

On June 29, 2017, the district court sentenced Defendant to ten years at hard labor for aggravated escape, to be served consecutively to his other sentences and to be served without benefit of parole. A written motion to reconsider sentence was filed on July 7 and denied by the trial court on July 12.[2] Defendant now seeks review of the ten-year sentence imposed herein.[3]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is a possible error patent concerning the offense to which Defendant pled guilty and an error patent involving the sentence imposed.

Defendant was originally charged in this docket number with four counts, all felonies. In the bill of information, Defendant was charged with attempted

---

[2] The Motion to Reconsider Sentence bears both trial court docket numbers.

[3] Defendant's charges and sentences under docket numbers 87,354 and 86,777 were addressed together at the plea hearing and the sentencing hearing. Defendant has also appealed his sentences in 86,777. As the cases were not consolidated, the appeals bear two docket numbers with this court: 17-1041 and 17-1042.

2

aggravated escape in "Count 1", that "on or about September 2, 2014, defendant did intentionally attempt to depart from legal custody under circumstances wherein human life was endangered, in violation of R.S. 14:110.C. (Felony)."[4] Defendant indeed understood that charge to be attempted aggravated escape as reflected in a Motion for Preliminary Examination and Bond Reduction wherein he alleged, "The defendant has been charged herein with Attempted Aggravated Escape, Taking Contraband To & From Penal Institutions, two (2) counts Battery of a Correctional Facility and has not been indicted by a Grand Jury." On April 27, 2017, Defendant entered a plea of guilty, pursuant to a plea agreement, to the completed offense of aggravated escape. However, at no time did the State move to amend the bill of information to upcharge Defendant from the original attempt count. While it is clear that a "defendant, with the consent of the district attorney, may plead guilty to a lesser included offense to the offense charged in the indictment" without any formal amendment to the information or indictment as per La.Code Crim.P. art. 558, and that "the district attorney shall not be required to file a new indictment to charge the crime to which the plea is offered" when the defendant pleads to a non-responsive charge as per La.Code Crim.P. art. 487(B), Defendant here pled guilty to the completed offense of aggravated escape, not the lesser included offense, and there was no amendment of the bill of information. While a "trial judge is not without jurisdiction to accept a defendant's knowing and voluntary guilty plea simply because the plea is not responsive to that charged in the bill of information and the district attorney has not amended the bill to conform to the plea" and we are no longer required to view such as an error patent, this does not "alter the fundamental

---

[4] The bill does not contain the statutory citation for attempt, La.R.S. 14:27. However, as will be discussed in this opinion, the omission did not mislead Defendant to his prejudice. La.Code Crim.P. art. 464. Defendant understood he was charged with attempt and he knowingly and intelligently pled guilty to the completed offense pursuant to a plea agreement.

requirement that prosecution be properly instituted by bill of information that informs the accused of the nature of the accusations against him nor does it alter the requirement that a defendant's guilty plea be voluntarily and intelligently made" as a "nonresponsive guilty plea made without an amended bill might raise the concern that a defendant did not understand the nature of the charges against him." *State v. Jackson*, 04-2863, p. 14 (La. 11/29/05), 916 So.2d 1015, 1023.

The state of the record herein requires us to ascertain whether Defendant actually entered the plea of guilty to aggravated escape or whether it was intended to be a plea of guilty to the originally charged offense of attempted aggravated escape. The consequence matters greatly here, as the penalty imposed on Defendant was ten years, the maximum sentence for the completed offense, whereas the maximum penalty for an attempted aggravated escape is only five years. La.R.S. 14:27.

At sentencing, the trial court alluded that Defendant was being sentenced for attempted aggravated escape, stating, "Now, to the, uh, to the sentencing itself, . . . . In 87,354, the attempted aggravated escape, while he was incarcerated" and later stated that, "He never did make it out of the jail. Thus, the -- the -- the -- the charge -- but it doesn't matter if he did, or not, the simple escape started when he jumped on the deputy and he left that cell without any approval from anyone". Despite this wording, the trial court went on to impose the maximum sentence for aggravated escape. In addition, the minutes of court refer to the original "Count 1" charge in this matter on multiple occasions as simple escape.[5]

A review of the record from Defendant's plea entered on April 27, 2017 reflects that Defendant in fact pled guilty to the completed offense of aggravated

---

[5] When there is a conflict between the transcript and the minutes, the transcript prevails. *State v. Salameh*, 09-1422, p. 3 (La.App. 3 Cir. 5/5/10), 38 So.3d 568, 569.

4

escape after being fully advised of the correct charge and the maximum sentence for the completed charge.

BY THE COURT:

Okay, lastly, under Number 87,354, the -- the charge of aggravated escape, under Title 14, Section 110C, reads: "Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered." Do you understand those elements?

A.    I  understand, Your Honor

Q.    And the penalty provisions there are  --

BY MR. MASON:

And, Your Honor, those would be in paragraph C (2).

BY THE COURT:

C (2), yes.

Q.  Whoever commits an aggravated escape is herein defined -- as herein defined, shall be imprisoned at hard labor for not less than five years or more than ten years and any sentence on this offense shall not run concurrent with any other sentence.  Do you understand that?

A.  I understand, Your Honor.

Q.  And that means that, in this case, on the three charges I would sentence you on, I have to run the sentence I give you on the aggravated escape consecutive to the other two sentences.  You understand that?

A.  I understand, Your Honor.

Q.  All right, sir.  Now, you heard your attorney cite what the agreement is. You'd plead to the lesser charge of manslaughter.  You would plead to the charge of obstruction as charged, and you would plead to the charge of aggravated escape.  In return, the State agrees to accept your plea to the lesser charge of manslaughter and to dismiss Counts 2, 3, and 4 on Bill of Information Number 87,354.  Is that correct, sir?

A.  That's correct, Your Honor.

Q.  All right.  Did they or did I leave anything out that you have been led to believe is part of the deal?

5

A. No, Your Honor.

Q. We've covered it completely?

A. Yes, Your Honor.

The trial court fully advised Defendant of the nature of the charge of aggravated escape and the penalty therefor, his constitutional rights in connection with his plea, and found that Defendant knowingly and voluntarily waived his rights in compliance with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709 (1969). Additionally, we find there was no misunderstanding as to the actual charge being pled to pursuant to the plea agreement considering the transcript from the plea itself, and further considering the affidavit of understanding of rights and nature of the plea that was executed and filed contemporaneously with the plea indicating that Defendant was pleading to the completed offense of aggravated escape. *See State v. Readoux,* 614 So.2d 175 (La.App. 3 Cir. 1993). Thus, we conclude that Defendant entered a knowing, intelligent and voluntary plea to aggravated escape as per the plea agreement and was sentenced for the completed offense.

We do, however, find that Defendant received an illegally excessive sentence for aggravated escape in this case, though this error likewise does not require a reversal and remand. Defendant was sentenced to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence. Louisiana Revised Statutes 14:110 does not require that the sentence be served without benefit of probation, parole, or suspension of sentence. This in and of itself does not require the reversal of the sentence. As stated by this court in *State v. Hurst,* 10-1204, pp. 5-6 (La.App. 3 Cir. 4/13/11), 62 So.3d 327, 332, *writ denied,* 11-975 (La. 10/21/11), 73 So.3d 383:

> The trial court imposed an illegally excessive sentence on the conviction of purse snatching. The trial court sentenced Hurst to twenty years at hard labor without the benefit of probation, parole, or

6

suspension of sentence. Louisiana Revised Statutes 14:65.1 does not prohibit the benefits of probation, parole, or suspension of sentence. Although the trial court has discretion to refuse to suspend the sentence, the trial court does not have discretion to deny parole eligibility when the penalty provision does not authorize such a denial. Accordingly, this court amends Hurst's sentence to delete the denial of parole. *See State v. Yancy*, 93-2798 (La.5/31/96), 673 So.2d 1018; *State v. Buckley*, 02-1288 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193. *See also State v. Sanders*, 04-17 (La.5/14/04), 876 So.2d 42 (stating that an appellate court should not rely on the self-activating provisions of La.R.S. 15:301.1 when the trial court imposes limits beyond those statutorily authorized). This court also instructs the trial court to make an entry in the minutes reflecting this change. *See State v. Tate*, 99-1483 (La.11/24/99), 747 So.2d 519.

Accordingly, Defendant's sentence will be amended to delete the denial of parole eligibility, and the trial court is instructed to make an entry in the court minutes and on the commitment order reflecting this change.

## ASSIGNMENT OF ERROR

Defendant asserts that his ten-year sentence is excessive.[6] Pursuant to La.R.S. 14:110, this is the maximum sentence for aggravated escape.[7]

> To find that a sentence is excessive, this court must conclude that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981); *State v. Everett*, 530 So.2d 615 (La.App. 3 Cir.1988), *writ denied*, 536 So.2d 1233 (La.1989). In light of the criteria expressed by Article 894.1, a review for excessiveness of an individual sentence should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. *State v. Lewis*, 489 So.2d 1055, 1061 (La.App. 1 Cir.), *cert denied*, 493 So.2d 1218 (La.1986).

*State v. Texada*, 98-1647, pp. 19-20 (La.App. 3 Cir. 5/5/99), 734 So.2d 854, 865.

---

[6] Defendant's heading in brief indicates there are two assignments of error, and the State responds in kind. However, there is essentially one argument addressing two sub-issues. Defendant did not assert that the sentence was excessive as having been ordered to be served without benefits.

[7] La.R.S. 14:110 requires that the sentence run consecutively to any other sentence imposed.

Sentences falling within statutory sentencing ranges may still be unconstitutionally excessive if they shock the sense of justice or make no meaningful contribution to acceptable penal goals. Several factors may be considered when reviewing such a sentence for excessiveness:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99–0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95–2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith,* 02–719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03–562 (La. 5/30/03), 845 So.2d 1061.

In pronouncing the sentence for the aggravated escape charge herein,[8] the district court stated:

> Now, to the, uh, to the sentencing itself, . . . .
>
> In 87,354, the attempted aggravated escape, while he was incarcerated, after his arrest on this charge, he, uh, he and other -- another inmate was [sic] able to obtain the presence of Deputy Dalme in the cell and this defendant jumped on the deputy, struck him repeatedly, caused some injuries and then he made his way out of the cell towards the front area of the jail towards the office area and he was confronted by Deputy Scott, who he then got into a fight with and injuries resulted from that to the deputy. He never did make it out of the jail. Thus, the -- the -- the -- the charge -- but it doesn't matter if he did, or not, the simple escape started when he jumped on the deputy and he left that cell without any approval from anyone. And, quite frankly, that's -- that's what we have here. Now, the plea agreement and there was one in all these cases of -- of different -- different plea agreements, but in this case, he was charged with second degree murder. He entered a plea to a lesser included charge of manslaughter, and the State agreed to accept that. He also agreed to plead to Count 2, the obstruction of justice, and the other bill of information concerning the escape. Uh, the

---

[8] Although the trial court stated the charge was attempted aggravated escape, Defendant in fact pled guilty to aggravated escape as addressed above.

8

State dismissed Counts 2, 3, and 4, other charges contained in eight -- 87,354, and, uh, he -- he has benefitted substantially from the plea agreement. Instead of a life sentence, which is mandatory for second degree murder, his exposure now is less on each of these charges. Uh and -- and, so, there's substantial benefit here from this, uh, and that's some of the things that the court has considered. As I said, there are numerous letters from the victim's family and friends, uh, and I did read those documents I referred to from Mr. Ayala and also a -- the expandable folder -- folder of things including statements given by other witnesses, as I noted, some of whom Mr. Ayala noted or referred to or referenced in his -- in his letter to the court in the attachments. I see no substantial grounds which would tend to excuse his criminal conduct, and this is -- these are factors under Article 894.1 of the Code of Criminal Procedure. He's young, he's 27 years of age. He served in the United States Army, he was an M. P. at one time. He is single. He's in good health. He was discharged from the United States Army after he had been, on multiple times, found to be using or -- or -- or have possession of marijuana. And, uh, one would think that an M.P., first of all, would know the consequences of that and, certainly, one would think that if he got hit the first time with punishment for an infraction, he would not do it again but, ultimately, he did, and the Army gave him a general discharge. He received his G.E.D., uh, high school education G.E.D. in 2009. He admitted to the use of alcohol, marijuana, and cocaine in the past. While in the United States Army, in 2012, he had counseling or treatment for his marijuana problem. He had a prior record in that there are three convictions for marijuana use in the United States Army. He has no convictions in the civilian arena.

Although the trial court sentenced Defendant to the maximum term of ten years for aggravated escape, Defendant received a substantial benefit by his plea agreement with the State, that included the reduction of a second degree murder charge to manslaughter in another case, and the benefit of the dismissal of other charges filed within trial court docket number 87,354 in the instant case, including two counts of battery on a correctional facility employee, and introduction of contraband into a penal facility, all felony offenses. Indeed, the maximum sentencing exposure faced by Defendant prior to the plea agreement was life, without the possibility of parole for second degree murder, plus sixty-five years in

9

prison, twenty-five of which would be required to run consecutively to the other sentences.[9]

> Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender. *State v. Russell,* 42,479 (La.App. 2 Cir. 9/26/07), 966 So.2d 154, 156, *writ denied,* 07–2069 (La.3/7/08), 977 So.2d 897. However, "where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense." *State v. Falcon,* 44,829, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 172, 175.

*State v. Herbert,* 12-228, pp. 5-6 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied,* 12-1641 (La. 2/8/13), 108 So.3d 78.

In the instant case, the trial court gave extensive reasons for the sentence imposed and thoroughly considered, as required by La.Code Crim.P. art. 894.1, the background of Defendant, the circumstances surrounding the aggravated escape charge, including the facts presented that two deputies were injured in the crime, with one suffering serious face and head injuries, the benefit received by Defendant from the reduction of the second degree murder charge to manslaughter in the overall plea agreement with the State, and the dismissal of three other felony charges pending. Considering this, we do not find the maximum sentence imposed for aggravated escape to be excessive.

## DECREE

For the reasons herein, we affirm Defendant's sentence of ten years at hard labor with the Louisiana Department of Corrections, to run consecutively to the other sentences Defendant is ordered to serve. However, we amend the sentence to reflect that Defendant is entitled to the benefit of parole eligibility, and the trial court is

---

[9] La.R.S. 14:130.1, Obstruction of Justice, provides for a maximum of forty years in prison. La.R.S. 14:34.5 provides a maximum sentence of five years, which must be imposed consecutively to any other sentence. La.R.S. 14:402 provides for a maximum penalty of five years for a violation of section E thereof, to be run consecutively with any other sentence.

10

instructed to make an entry in the court minutes and on the commitment order reflecting this change.

**AMENDED AND AFFIRMED.**